IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-

**TAMMY L. BAUM,**

       Plaintiff,

**v.**

**DUNMIRE PROPERTY MANAGEMENT, INC.**

       Defendant.

**COMPLAINT AND JURY DEMAND**

COMES NOW Plaintiff Tammy L. Baum ("Plaintiff"), and for her Complaint against Defendant Dunmire Property Management, Inc. ("Defendant" or "Dunmire"), alleges the following:

**Introduction**

1.    This is an action for damages to redress violations of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq.*, and the Genetic Information Nondiscrimination Act, and for wrongful termination in violation of public policy. Plaintiff claims she was subjected to discrimination based on her association with an individual with a disability and discrimination based on misuse and/or mis-acquisition of family medical history information.

1

### Jurisdiction

2. The Court has jurisdiction over the parties and subject matter of this case pursuant to 42 U.S.C. § 12117, 42 U.S.C. § 2000e-5, and 28 U.S.C. § 1331. The Court has supplemental jurisdiction over the state law claim pursuant to 28 U.S.C. § 1367(a).

### Venue

3. The unlawful employment actions described below were committed in the State of Colorado. Venue is therefore proper in the United States District Court for the District of Colorado under 28 U.S.C. § 1391(b).

### Exhaustion of Administration Remedies

4. On or about September 16, 2020, Plaintiff filed a charge of discrimination against Defendant with the United States Equal Employment Opportunity Commission in Denver, Colorado alleging discrimination on the basis of association with an individual with a disability. On or about October 29, 2020, Plaintiff filed an amended charge of discrimination alleging discrimination on the basis of misuse and/or mis-acquisition of family medical history information.

5. On or about March 16, 2021, the Equal Employment Opportunity Commission mailed Plaintiff a Right to Sue letter. This action was commenced within 90 days of Plaintiff's receipt of that letter.

### Parties

6. Plaintiff Tammy L. Baum is a resident o Colorado Springs, Colorado and was employed with Dunmire Property Management, Inc. from approximately December 23, 2019 through March 28, 2020.

7. Defendant Dunmire Property Management, Inc. is a Colorado corporation that manages multi-family properties for third parties who own apartment buildings and employs more than 15 employees.

**Factual Background**

8. Paragraphs 1 through 7 are incorporated herein.

9. Plaintiff was employed with Dunmire as an accounts receivable clerk earning $18.00 per hour.

10. Plaintiff's primary duties included entering data and deposits and maintaining residents' files for Dunmire's managed properties.

11. Plaintiff performed her duties competently. Dunmire never disciplined Plaintiff for her performance either orally or in writing.

12. On or about March 16, 2020, Plaintiff sent Lulu Elliot, Dunmire's Controller and Plaintiff's direct supervisor, a text message informing Ms. Elliot that Plaintiff's father, James Kinkaid, had been admitted to the hospital for respiratory issues and was being tested for COVID-19.

13. On March 16, 2020, Ms. Elliot responded to Plaintiff's text message with text messages asking Plaintiff when her father first became symptomatic, when Plaintiff last had contact with her father, and whether her father had been given a COVID-19 test.

14. On March 16, 2020, Plaintiff responded to Ms. Elliot's text messages stating that she had had personal contact with her father many times within the past several weeks but didn't have any COVID-19 symptoms.

15.     On March 16, 2020, Ms. Elliot responded with a text message instructing Plaintiff not to come to the office until she found out the results of her father's COVID-19 test. Ms. Elliot added that Plaintiff would be putting Dunmire and its residents at risk if her father tested positive. When Plaintiff asked if she could work from home, Ms. Elliot denied the request.

16.     On March 17, 2020, Ms. Elliot sent Plaintiff a text message asking if Mr. Kinkaid's test results had come back. Plaintiff responded with text messages indicating that there were still no test results but confirmed that her father had pneumonia. Ms. Elliot responded with a text message expressing hope that Plaintiff's father would test negative.

17.     On March 18, 2020, Plaintiff sent Ms. Elliot another text message stating that the hospital still had no test results for her father. Ms. Elliot responded with a text message telling Plaintiff that Ms. Elliot had five family members test for COVID-19, with all five results coming back negative within a few days.

18.     On March 18, 2020, Plaintiff sent Amy Rizzuto, Dunmire's Vice President, an email about her text message exchanges with Ms. Elliot. Plaintiff told Ms. Rizzuto she was devastated about her 82 year-old father who had a history of respiratory illness, and that she didn't want to lose her job because of her dad's illness.

19.     On March 19, 2020, Ms. Rizzuto responded to Plaintiff's email with an email stating that for all Dunmire employees who has been in contact with someone ill, Dunmire had asked that employee to self-quarantine, but that she would talk to Crystal

Dunmire (Dunmire's owner and President) and "see what date we were thinking for your return and let you know."

20. On March 19, 2020, Plaintiff informed Ms. Elliot via text message that the results of her father's COVID-19 test had not yet been reported and against requested to work remotely.

21. On March 19, 2020, Plaintiff spoke with Ms. Elliot by telephone and told her that she had no COVID-19 symptoms and wanted to come back to work. However, Ms. Elliot told Plaintiff to not come to the office until her father received a negative test result or until March 30, 2020, whichever occurred first. When Plaintiff repeated her request to work from home, Ms. Elliot denied her request.

22. As of March 19, 2020, Plaintiff was the only Dunmire office employee who was not permitted to work remotely.

23. On March 20, 2020, Rhonda Dunmire, Dunmire's Assistant Controller, asked Plaintiff via text message if she had received her father's test result. Plaintiff responded by telling Rhonda that she had not received any results.

24. On March 26, 2020, Plaintiff sent Rhonda a text message informing her that Plaintiff's father had tested positive for COVID-19.

25. On March 27, 2020, Plaintiff sent Rhonda a text message requesting that she work from home. Rhonda responded with a text message stating, "I'll talk to Crystal about it. We're all scrambling to find stuff to do right now. How are you feeling? Any problems?" Later that day, Rhonda sent Plaintiff a follow up text message asking Plaintiff to "keep me posted on your Dad please."

26. On March 28, 2020, Ms. Elliot called Plaintiff and told her that she hated to be the one to tell her the news, but that Dunmire was "rearranging" the office and that Plaintiff's position was being eliminated. During this phone call Ms. Elliot offered to give Plaintiff a positive job reference.

27. On March 29, 2020, Ms. Elliot sent Plaintiff a text message stating, "[T]he whole office is shutdown and since then Crystal made the decision to lay you off."

28. Mr. Kinkaid died on March 31, 2020 due acute respiratory distress syndrome, bilateral pneumonia, and COVID-19.

**First Cause of Action**
**(Violation of the Americans with Disabilities Act,**
**42 U.S.C. § 12101, *et seq*.)**

29. Plaintiff realleges and incorporates by reference each and every paragraph as though fully set forth herein.

30. Plaintiff has exhausted her administrative remedies under the Americans with Disabilities Act.

31. Plaintiff's father, James Kinkaid, had a history of respiratory illness, was diagnosed with COVID-19, and died due to acute respiratory distress syndrome and bilateral pneumonia exacerbated by COVID-19, some or all of which substantially impair one or more major life activity and/or one or more major bodily function. 42 U.S.C. § 12102(1)(A), (2)(A), (2)(B) (3); 29 C.F.R. § 1630.2(g)(1)(i), (h)(1), (i)(1), and (j)(1).

32. Plaintiff was qualified for and did satisfactorily perform the essential functions of her job as an accounts receivable clerk.

33. Dunmire terminated Plaintiff's employment on March 28, 2020, after learning that Mr. Kinkaid was hospitalized with respiratory issues and pneumonia, and two days after learning of Mr. Kinkaid's positive COVID-19 test, citing "elimination of position" as the reason for her termination.

34. Dunmire discriminated against Plaintiff when it refused to permit her to telework and when it terminated her employment. 42 U.S.C. § 12112(b)(4); 29 C.F.R. § 1630.8.

35. Dunmire's actions violated Plaintiff's rights under the Americans with Disabilities Act.

## Second Cause of Action
### (Violation of the Genetic Information Nondiscrimination Act)

36. Plaintiff realleges and incorporates by reference each and every paragraph as though fully set forth herein.

37. When Plaintiff informed Dunmire that Mr. Kinkaid was hospitalized with respiratory issues and was being tested for COVID-19, Dunmire asked Plaintiff on several occasions for the results of her father's test.

38. On March 26, 2020, Plaintiff informed Dunmire that her father had indeed tested positive for COVID-19.

39. Dunmire's requests for Mr. Kinkaid's COVID-19 test results constitute acquisition and/or use of information about family medical history prohibited by the Genetic Information Nondiscrimination Act. 29 C.F.R. §§ 1635.3(a)-(c), 1635.8.

40. Dunmire denied Plaintiff's requests to telework after repeatedly asking for Mr. Kinkaid's COVID-19 test results and terminated her employment after learning of Mr. Kinkaid's COVID-19 positive test. 29 C.F.R. §§ 1635.4(a), 1635.5.

41. Dunmire's actions violated Plaintiff's rights under the Genetic Information Nondiscrimination Act.

## Third Cause of Action
### (Wrongful Termination in Violation of Public Policy)

42. Plaintiff realleges and incorporates each and every paragraph as though fully set forth herein.

43. Plaintiff's discharge contravenes a well-defined and clear mandate of public policy as set forth in the Colorado Constitution, Colorado statutes, regulatory provisions, executive orders, and/or the common law in that public policy prohibits employers from discriminating against employees because they, a family member, or someone with whom they've been in contact with test positive for COVID-19.

44. Dunmire's refusal to permit Plaintiff to telework and its discharge of Plaintiff because of her father's positive COVID-19 test are contrary to public policy and harm the general public. Colorado public policy, and specifically Colorado Executive Order D 2020 0044, mandates that employers accommodate workers affected by COVID-19 by promoting telecommuting or other remote work options and prohibits employers from discriminating against employees who have had contact with an individual with a known positive case of COVID-19. By refusing to permit Plaintiff to work remotely and by terminating her employment, Dunmire discriminated against Plaintiff and therefore violated a well-established Colorado public policy.

45. Dunmire refused to permit Plaintiff to telework after learning that her father was hospitalized with respiratory illness and was being tested for COVID-19, and terminated Plaintiff's employment two days after learning that Plaintiff's father had tested positive for COVID-19.

46. Dunmire's denial of Plaintiff's request to telework and its termination of Plaintiff was motivated by bad faith, malice, and/or retaliation against Plaintiff for performing an act that public policy encourages and/or for failing to perform an act that public policy condemns.

47. As a direct and proximate result of Dunmire's above-described conduct, Plaintiff has suffered economic and non-economic damages, entitling her to an award of actual, compensatory, and consequential damages, including damages for emotional distress and mental anguish, in amounts to be proven at trial.

**Prayer for Relief**

WHEREFORE, Plaintiff prays for the following relief pursuant to 42 U.S.C. § 12117, 42 U.S.C. § 2000e-5, 42 U.S.C. § 1981a, Fed. R. Civ. P. 54, and Colo. R. Civ. P. 54:

a. Judgment in Plaintiff's favor and against Defendant;

b. Nominal damages;

c. Reinstatement and back pay, including loss of benefits, or front pay in lieu of reinstatement;

d. Non-pecuniary and compensatory damages, including damages for emotional distress and consequential damages;

9

e. Punitive damages;

f. Pre- and post-judgment interest at the highest rates allowed by law;

g. Costs and reasonable attorney fees; and

h. All other legal or equitable relief to which Plaintiff is entitled.

## Jury Demand

**Plaintiff requests this matter be tried by a jury.**

Respectfully submitted this 5th day of April 2021.

LAW OFFICES OF GREGORY E. GIVENS, P.C.

*/s/ Gregory E. Givens*
Gregory E. Givens, #41810
18 N. Sierra Madre Street, Suite E
Colorado Springs, CO 80903
Telephone: 719-291-4353
gegivens@hotmail.com
*Attorneys for Plaintiff Tammy L. Baum*